UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:17-CR-37-TAV-DCP-5 ) |
| MICHAEL BROWN, | ) ) |
| Defendant. | ) |

## **MEMORANDUM OPINION AND ORDER**

Defendant believes himself entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) [Docs. 634, 637]. Yet, because defendant is not currently in Bureau of Prisons custody and because transfers to BOP facilities have stopped, the BOP has advised the government that it will not seek compassionate release on defendant's behalf. The Court agrees with the government that § 3582(c)(1)(A)'s exhaustion requirement, which is a mandatory prerequisite to considering the motion's substance, is accordingly satisfied. However, while the Court has considered the merits of defendant's request, it does not find that his circumstances present extraordinary and compelling reasons for a sentence reduction under § 3582(c)(1)(A)(i). Therefore, the Court will **DENY** defendant's motion.

**I.     Background**

On May 2, 2017, defendant was charged with one count of conspiracy to distribute and possess with the intent to distribute five (5) kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). He appeared on this charge on June 27, 2017, by way of a writ of habeas corpus ad prosequendum [Doc. 127] and was ordered

detained by the magistrate judge [Doc. 132]. Defendant later plead guilty to a lesser included offense, that is, conspiracy to distribute and possess with the intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B) [Docs. 225, 287]. On April 17, 2019, the Court sentenced defendant to forty-eight (48) months' imprisonment and ordered that this sentence run concurrently with any sentence imposed in defendant's then-pending cases in Knox County Criminal Court [Doc. 565; *see* Doc. 337 ¶¶ 47, 48].

After his federal sentencing, defendant remained in state custody, apparently awaiting sentencing in his pending Knox County Criminal Court cases [Doc. 634 p. 1]. Defendant reports that on July 17, 2020, he "pled to a 4 year sentence concurrent to his federal sentence in this case and to be served in split confinement of time served and the remainder on unsupervised probation" [*Id.*]. Although defendant is allegedly "no longer serving a state sentence" [Doc. 637 p. 2], he is not in BOP custody and, according to defendant, "[t]he Marshals say they are unlikely to transport anyone soon" [*Id.*]. Thus, defendant remains at the Knox County Detention Facility, where, he alleges, he "has been in jail since his arrest in June of 2017," "some 37 months" [Doc. 634 p. 1].

In his motion, defendant reports that he was recently informed that both his mother and sister were hospitalized with COVID-19 [*Id.*]. He states that he later learned that his sister had been released from the hospital [Doc. 637 p. 1] but that his mother had succumbed to the virus [*Id.*; Doc. 634 p. 1]. Defendant also states:

> He was concerned for his own health due to prolonged time in the Knox County jail and more so after the recent reports of active infections in the jail.

> Now having lost his mother and with his sister in the hospital with the same disease, his anxiety has increased and he feels the need to be with his remaining family in these circumstances.

[Doc. 634 p. 1].

For these reasons, on July 17, 2020, defendant filed the instant motion requesting that the Court grant him compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [Doc. 634]. The government has responded in opposition [Doc. 636], and defendant replied [Doc. 637]. The matter is now ripe for resolution.

## II. Legal Standard

A court generally lacks "the authority to change or modify [a sentence, once imposed,] unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (citing *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). The First Step Act of 2018's amendment of § 3582(c)(1)(A) revised one such exception. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018). Prior to the First Step Act, a district court could grant relief under § 3582(c)(1)(A) only on motion of the Director of the Bureau of Prisons. Now a court may modify a defendant's sentence upon a motion by a defendant if the defendant has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on defendant's behalf or after the lapse of thirty (30) days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. § 3582(c)(1)(A). If the defendant surmounts this preliminary hurdle, the Court may grant a sentence reduction

3

"after considering the factors set forth in section 3553(a) to the extent that they are applicable" if it finds:

> (i)  extraordinary and compelling reasons warrant such a reduction; or
>
> (ii)  the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*Id.*

## III.  Analysis

### A.  Section 3582(c)(1)(A)'s Preliminary Threshold to Relief: Exhaustion

The Court examines first whether defendant has satisfied § 3582(c)(1)(A)'s exhaustion requirement,[1] which is a mandatory prerequisite to consideration of a compassionate release request on the merits. *United States v. Alam*, No. 20-1298, 2020 WL 2845694, at *2–3 (6th Cir. June 2, 2020). "When 'properly invoked,' mandatory claim-processing rules 'must be enforced.'" *Id.* at *3 (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017)). The only exceptions to such a mandatory

---

[1]  The Court uses "exhaustion requirement" throughout the opinion to refer to § 3582(c)(1)(A)'s instruction that a court may consider a motion by a defendant after the defendant has fully exhausted his administrative rights or after thirty (30) days have passed from the warden's receipt of a request to move on defendant's behalf for a sentence reduction, whichever is earlier.

claim-processing rule are waiver and forfeiture—neither of which applies here. *Id.* (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

Although defendant argues erroneously that the court may waive § 3582(c)(1)(A)'s exhaustion requirement [Doc. 634 p. 3–5], the government contends defendant has satisfied the requirement [Doc. 636 p. 8–10]. The parties agree that defendant is currently incarcerated at a non-BOP facility and that, as a result, he cannot presently file a request for compassionate release with the warden of a BOP facility [Doc. 634 p. 3; Doc. 636 p. 9]. Defendant asks the Court to waive the exhaustion requirement, arguing exhaustion is futile in this case [Doc. 634 p. 3–5]. But, the Court cannot waive a mandatory claim-processing rule when properly invoked, and the government properly raised the exhaustion issue by insisting in its response that it had not waived and does not waive the issue [Doc. 636 p. 8]. *See Alam*, 2020 WL 2845694, at *3 (noting that the exception for waiver did not apply because the government timely objected to defendant's failure to exhaust). However, the government represents that the Bureau of Prisons has "specifically advised" the government that "[b]ecause [defendant] is not in a BOP facility, and has no BOP warden to review a compassionate-release request, the Bureau of Prisons cannot meaningfully evaluate him for possible compassionate release," and thus, the BOP will not seek compassionate release on defendant's behalf [Doc. 636 p. 9].

The Court agrees with the government that the BOP's representation that it will not move for this defendant's compassionate release constitutes exhaustion because defendant has received a final, if informal, administrative decision, and no administrative remedies

5

remain available to him.  *See* § 571.63(b)–(c); 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Hernandez*, No. 18 Cr. 834-04, 2020 WL 1684062, at *2 (S.D.N.Y. Apr. 2, 2020) (finding that defendant had exhausted where BOP confirmed that it had denied defendant's compassionate release request and would not seek a motion on his behalf because the BOP could not assess defendant's circumstances while he remained in a private facility outside its custody); *United States v. Barringer*, No. 13-0129, 2020 WL 2557035, at *3 (D. Md. May 19, 2020) (characterizing exhaustion of the administrative process as "complete because [defendant not in BOP custody] ha[d] done all he [could] to exhaust his administrative remedies"); *United States v. Norris*, No. 7:19-cr-36-2, 2020 WL 2110640 (E.D.N.C. Apr. 30, 2020) (similarly finding that defendant could not direct his request to a BOP warden and government had not "identifie[d] any additional administrative procedures available to him").  The Court may therefore consider defendant's merits argument.

**B.     Whether Extraordinary and Compelling Reasons Justify Relief**

While the Court has authority to consider defendant's motion on the merits, defendant fails to establish extraordinary and compelling reasons warranting the requested sentence reduction.  *See* § 3582(c)(1)(A)(i).

Complying with the mandate in 28 U.S.C. § 994(t), as authorized by § 994(a)(2)(C), the United States Sentencing Commission promulgated a general policy statement describing the circumstances that constitute "extraordinary and compelling reasons" for a sentence reduction under § 3582(c)(1)(A) and providing specific examples.  USSG

6

§ 1B1.13.  Section 1B1.13 of the Federal Sentencing Guidelines provides a three-factor test for analyzing whether a sentence reduction is proper: after considering the § 3553(a) factors as applicable, the court may reduce a defendant's sentence if it determines as relevant here that (1) "extraordinary and compelling reasons warrant the reduction"; (2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (3) "the reduction is consistent with this policy statement."  USSG § 1B1.13.

The application notes for § 1B1.13 provide additional guidance for applying the extraordinary-and-compelling-reasons prong of § 1B1.13's three-part test, describing four (4) categories of circumstances that could present "extraordinary and compelling reasons." USSG § 1B1.13 cmt. n.1.  First, such circumstances could exist due to defendant's medical condition, if defendant is suffering from a terminal illness, or if defendant is suffering from a medical condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  § 1B1.13 cmt. n.1(A).  Second, defendant's age could provide extraordinary and compelling circumstances if defendant is at least sixty-five (65) years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least ten (10) years or seventy percent (70%) of the term of imprisonment.  § 1B1.13 cmt. n.1(B).  Third, certain family circumstances (i.e., the death or incapacitation of the caregiver of the defendant's minor child or minor children or the incapacitation of the defendant's spouse or registered partner when the defendant would

7

be the only available caregiver for the spouse or registered partner) could provide reason to grant a sentence reduction. § 1B1.13 cmt. n.1(C). Fourth, the Director of the Bureau of Prisons could identify "other reasons" for relief, some "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." § 1B1.13 cmt. n.1(D).

Although the basis for the argument is unclear, defendant asserts that "this Court has authority to consider whether the worsening global pandemic, combined with the other relevant circumstances in this case, present an extraordinary and compelling basis for a sentence reduction, regardless of whether it falls within one of the existing categories in § 1B1.13 Commentary" [Doc. 634 p. 6]. And while there is some disagreement amongst the district courts on the issue, this Court has previously rejected the argument that courts may make an independent finding that extraordinary and compelling circumstances meriting relief exist by not applying § 1B1.13 and the similar argument that courts may do so by stepping into the role of the BOP Director and applying subdivision (D)'s so-called "catchall" provision. *See United States v. Barnes*, No. 3:13-cr-117, 2020 WL 3791972, at \*5 (E.D. Tenn. July 7, 2020) (finding that applying the policy statement, including subdivision D, to motions filed by defendants, just as it applies § 1B1.13 to motions filed by the BOP, is proper absent any authoritative indication to the contrary and noting "[t]he First Step Act created a way for defendants to obtain expedited judicial review of a compassionate release request; it does not follow . . . that it changed the nature of that review"); *United States v. Brown*, No. 3:13-cr-014, 2020 WL 3511584, at \*5–6 (E.D. Tenn.

June 29, 2020) (concluding that continuing to apply the policy statement, including subdivision D as written, is not inconsistent with the First Step Act's ostensible purpose of increasing the use of compassionate release because "[t]he Act achieves this goal simply by granting defendants the ability to move for compassionate release on their own," and many defendants' motions "invoke the specific provisions of the policy statement rather than the catchall provision" (quoting *United States v. Hickman*, No. 6:15-42, 2020 WL 2838544, at *2 (E.D. Ky. June 1, 2020))).

Because any sentence reduction must be consistent with applicable policy statements, the fact that defendant's reasons do not fall into any of the four (4) categories of extraordinary and compelling circumstances justifies denying defendant's motion. § 3582(c)(1)(A). The Court will address each category in turn.

First, defendant discusses the COVID-19 pandemic and the risks that the virus poses to incarcerated persons generally [Doc. 634 p. 7]. But, as the government reasons, the COVID-19 pandemic does not fit into any of § 1B1.13's categories and thus does not provide a basis for a sentence reduction [Doc. 636 p. 10–11]. The policy statement directs courts to consider individual reasons for compassionate release, not general threats to incarcerated persons, much less a disease that "poses a threat to every person worldwide" [*Id.* at 10]. *See* § 1B1.13 cmt. n.1; *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it

9

may spread to a particular prison alone cannot independently justify compassionate release").[2]

---

[2] Defendant cites nearly twenty (20) "court orders granting release based on the pandemic" and contends that this "sampling of court orders . . . fails to convey the full volume of building precedent" [Doc. 634 p. 8–10]. However, these cases carry little to no persuasive value in this context. Not only are the cases, save one, out-of-circuit district court cases, none are analogous to defendant's case.

First, a large portion of the cases defendant cites, including the only case from a district court in this circuit, ordered defendants released in different contexts and thus under different statutes, which are inapplicable to defendant's case. *See, e.g.*, *United States v. Kennedy*, No. 18-20315, 2020 WL 1493481, at *4–5 (E.D. Mich. Mar. 27, 2020) (ordering defendant temporarily released pretrial under 18 U.S.C. § 3142(i)); *United States v. Copeland*, No. 2:05-cr-135, 2020 U.S. Dist. LEXIS 94739, at *5–11 (D.S.C. Mar. 24, 2020) (reducing defendant's sentence to time served under 18 U.S.C. § 3582(c)(1)(B), Section 2 of the Fair Sentencing Act, and Section 404 of the First Step Act); *United States v. Michaels*, No. 16-76, 2020 WL 1482553, at *1 (C.D. Cal Mar. 26, 2020) (pretrial release under § 3142(i)); *United States v. Jaffee*, No. 19-cr-88, Docs. 73–76 (D.D.C. Mar. 26, 2020) (pretrial release); *United States v. Harris*, No. 19-356, 2020 WL 1503444, at *5–6 (D.D.C. Mar. 27, 2020) (ordering defendant released pending sentencing under 18 U.S.C. § 3145(c)); *United States v. Perez*, No. 19-cr-297, 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (pretrial release under § 3142(i)); *United States v. Stephens*, No. 15-cr-95, 2020 WL 1295155, at *3 (S.D.N.Y. Mar. 19, 2020) (same); *United States v. Bolston*, No. 1:18-cr-382, Doc. 20 (N.D. Ga. Mar. 30, 2020) (same); *United States v. Barkman*, No. 3:19-cr-52, 2020 WL 1811343, at *4 (D. Nev. Mar. 17, 2020) (temporarily suspending the condition of defendant's probation that required he present himself for intermittent confinement under 18 U.S.C. § 3563)).

The remaining cases that are analogous in context (i.e., granting compassionate release under § 3583(c)(1)(A)) are easily distinguishable. Most involved a defendant, who unlike the defendant in the instant case, alleged suffering from a medical condition that placed him or her at a heightened risk of death or serious illness from COVID-19. *See, e.g.*, *United States v. Edwards*, No. 6:17-cr-3, 2020 WL 1650406, at *5 (W.D. Va. Apr. 2, 2020) (granting compassionate release in light of defendant's incurable brain cancer in combination with his "high risk" for serious illness or death if he were to contract COVID-19, but noting the "fact-specific basis for its ruling" and that while "many will have [concerns] about the spread of COVID-19 in institutional settings, the compassionate relief mechanism will not afford relief to many inmates"); *United States v. Perez*, No. 17-cr-513-3, 2020 WL 1546422, at *4 (S.D.N.Y. Apr. 1, 2020) (granting compassionate release motion, which was unopposed as to the merits, where defendant had medical complications from recent surgeries that placed him at a heightened risk of serious illness or death from COVID-19); *United States v. Rodriguez*, No. 2:03-cr-271, 2020 WL 1627331, at *7–11 (E.D. Pa. Apr. 1, 2020) (granting compassionate release in light defendant's medical conditions, including diabetes, hypertension, and obesity, in combination with the risk posed to defendant by the COVID-19 pandemic in light of these conditions); *United States v. Gonzalez*, No. 2:18-cr-232, 2020 WL 1536155, at *2–3 (E.D. Wash. Mar. 31, 2020) (granting compassionate release motion of sixty-

However, as the government notes [Doc. 636 p. 11], a defendant's medical condition could provide an extraordinary and compelling reason under § 1B1.13 cmt. n.1(A)(ii) if a defendant suffers from a chronic medical condition that the Centers for Disease Control has recognized as elevating the risk of becoming seriously ill from COVID-19. § 1B1.13 cmt. n.1(A)(ii)(I); *see also* People of Any Age with Underlying Medical Conditions, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited July 20, 2020). A court could find that defendant's medical condition is one "from which he or she is not expected to recover," i.e. a chronic condition, and is one, heightened by risks posed by COVID-19, that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." § 1B1.13 cmt. n.1(A)(ii); *see, e.g.*, *Barnes*, 2020 WL 3791972, at *6.

---

four (64) year-old defendant who suffered from chronic obstructive pulmonary disease and emphysema); *United States v. Muniz*, No. 4:09-cr-199, 2020 WL 1540325, at * 1–2 (S.D. Tex. Mar. 30, 2020) (granting compassionate release motion of defendant who suffered from end stage renal disease, diabetes, and arterial hypertension).

Other cases defendant cited that granted compassionate release provided minimal analysis, thus offering weak persuasive authority. *E.g.*, *United States v. Hernandez*, No. 18-20474, 2020 WL 4333485, at *1 (S.D. Fla. Apr. 2, 2020) (granting an unopposed motion for compassionate release in a brief order that contained no discussion of the facts upon which the ruling was based, the statutory framework for compassionate release, or the applicability of the various USSG § 1B1.13 categories); *United States v. Marin*, No. 15-cr-252, Docs. 1325, 1326 (E.D.N.Y. Mar. 30, 2020) (similar); *United States v. Powell*, No. 1:94-cr-316, Doc. 97 (D.D.C. Mar. 27, 2020) (same).

And a few cases granting compassionate release relied on other reasons outside those specified in the policy statement, which, as discussed, the Court finds is impermissible given that the determination of what circumstances fall within the "other reasons" category is explicitly reserved for the Bureau of Prisons. *Rodriguez*, 2020 WL 1627331, at *2–6; *Gonzalez*, 2020 WL 1536155, at *2; *cf. Campagna*, 2020 WL 1489829, at *3.

11

But, here, defendant has not alleged that he suffers from any medical condition that places him at an increased risk of death or serious illness from COVID-19, and defendant does not identify any specific condition at the Knox County Detention Facility that increases his risk of infection. Rather, it appears that the steps taken by officials at the facility [*see* Doc. 636 p. 4–5 (listing the various precautionary and mitigation measures undertaken)] have been effective in mitigating the risk of exposure and spread of COVID-19 at the facility. Indeed, as of July 17, 2020, there is only one (1) reported positive test amongst the inmates at the facility and three (3) amongst staff [*see id.* at 5]. Thus, the Court finds that defendant's ability to provide self-care within the environment of a correctional facility has not been substantially diminished, *see* § 1B1.13 cmt. n.1(A)(ii); nor does defendant allege that he suffers from a terminal illness. *See* § 1B1.13 cmt. n.1(A)(i). As such, his circumstances do not fall within the first category of extraordinary and compelling reasons justifying a sentence reduction.

Next, turning to the second category of exceptional and compelling reasons, defendant does not argue or present facts suggesting his age constitutes an extraordinary and compelling reason. *See* § 1B1.13 cmt. n.1(B). And similarly, moving ahead to the fourth category, the Bureau of Prisons has not identified "other reasons" justifying this defendant's release. *See* § 1B1.13 cmt. n.1(D); Program Statement No. 5050.50, Bureau of Prisons, https://www.bop.gov/policy/progstat/5050_050_EN.pdf (last visited July 20, 2020). Thus, only the third category, that is, defendant's family circumstances, remains. *See* § 1B1.13 cmt. n.1(C).

Defendant states that his mother and sister both contracted COVID-19 and that, while his sister has apparently recovered, his mother eventually succumbed to the virus [Doc. 637 p. 1]. While defendant's family circumstances are undoubtedly sympathetic, they are not consistent with the kinds of circumstances that constitute extraordinary and compelling reasons for a sentence reduction under § 1B1.13 cmt. n.1(C). That category relates only to situations involving "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children[, or] [t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." § 1B1.13 cmt. n.1(C). Neither of which is consistent with defendant's described family circumstances. Accordingly, defendant's family circumstances are not a basis for release. *See United States v. Chaney*, No. 5:09-cr-55, 2020 WL 4228125, at *3 (E.D. Ky. July 23, 2020) (declining to grant compassionate release based on family circumstances not set forth in the policy guidelines).

Thus, it appears defendant's reasons do not fall into any of the four (4) categories of extraordinary and compelling circumstances set forth in § 1B1.13 cmt. n.1.[3] Because

---

[3] Defendant argues, mostly in his reply brief, that the amount of time remaining on his sentence (about eleven (11) months, by defendant's calculation), in combination with the other circumstances discussed and the fact that he is not in BOP custody, provides extraordinary and compelling reasons justifying his release. Specifically, he states that he has completed over thirty-seven (37) months of his forty-eight-month sentence [Doc. 637 p. 1]. At eighty-five percent (85%), defendant notes, "his sentence would be complete at 40.8 months" [*Id.*]. Defendant further states, "the last 6 months of most federal inmates['] sentences are served in a halfway house[, and] those are the last six months BEFORE the 85% of the sentence is served" [*Id.* at 2]. But for these extraordinary times, defendant argues, he would have already been released to a halfway house [*Id.*].

13

defendant does not present reasons for release that qualify as extraordinary and compelling under § 3582(c)(1)(A)(i), the Court does not need to consider whether "the defendant is . . . a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" or whether "the reduction is [otherwise] consistent with this policy statement." USSG § 1B1.13.

## IV. Conclusion

Although the Court has authority to consider defendant's request for a sentence reduction under § 3582(c)(1)(A) because defendant has fully exhausted his administrative remedies, it will deny the motion because defendant has not presented extraordinary and compelling reasons for release. Accordingly, defendant's motion for compassionate release [Doc. 634] is **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

---

These points have no bearing on the Court's analysis of the applicability of the categories of extraordinary and compelling reasons set forth in USSG § 1B1.13 cmt. n.1. And while these circumstances could potentially be material to an analysis of § 1B1.13 cmt. n.1(D)'s catchall category, as discussed, the Court must not contravene the congressional choice to give the authority to define extraordinary and compelling reasons to the Sentencing Commission by finding some "other reasons" outside those set forth in § 1B1.13 cmt. n.1. Even if the Court could consider extraordinary and compelling factors beyond those specified in the policy statement, it would find that defendant's argument that he would have already been released to a halfway house is unsupported. Defendant does not discuss the factors that the Bureau of Prisons considers in determining whether one is eligible for designation to a halfway house or how those factors apply to defendant. *See El-Moussa v. Holder*, 568 F.3d 250, 257 (6th Cir. 2009) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones."). Nor has defendant provided evidence upon which the Court can ascertain the precise disposition of defendant's Knox County Criminal Court cases.